IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES HALVERSON as Personal Representative of the fee estate of JACK HALVERSON,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>DEBRA ANNE HAALAND, Secretary of the Interior,<br><br>　　　　　　Defendant. | CV 22-76-BLG-SPW<br><br><br>ORDER |

Before the Court is Defendant Debra Anne Haaland's ("Defendant" or "the United States") Motion to Dismiss (Doc. 17). Defendant argues that the United States has not waived sovereign immunity, so the Court does not have subject matter jurisdiction, and that Plaintiff James Halverson, as personal representative for the fee estate of Jack Halverson, failed to join a necessary party. (Doc. 18). Plaintiff disagrees, contending that the Court has jurisdiction under the Mandamus Act. (Doc. 22). For the following reasons, the Court denies Defendant's motion.

## I.　Background

Jack Halverson was an enrolled member of the Crow Tribe. (Doc. 1 at 4). Jack's mother, Dalia, was an original allottee to trust land adjacent to Allotment 1809, located in Yellowstone County, Montana. (*Id.*; Doc. 18-1 at 4). Jack

inherited his mother's land and purchased fractional interests in Allotment 1809. (Doc. 1 at 4). Eventually, Jack came to hold an 86.42% interest in Allotment 1809. (*Id.* at 5). Allotment 1809 contains 799.06 acres. (Doc. 18-1 at 5).

The other interest holders in Allotment 1809 are the Crow Tribe, Estate of Michelle Walking Bear, and Estate of Penny Powers ("Powers' Estate"). (*Id.* at 6-9). Defendant has represented that the parties' interests were divided as such:

- Powers' Estate: 5.55% (fee)
- Estate of Jack Halverson: 86.42% (trust)
- Crow Tribe: 6.79% (trust)
- Estate of Michelle Walking Bear: 1.23% (trust)

(*Id.*; Doc. 18 at 4).

In 2015, Jack filed with the Bureau of Indian Affairs ("BIA") a Petition for Partition of Allotment 1809 (Doc. 1 at 5), pursuant to 25 U.S.C. § 378, which grants the BIA the authority to partition allotments and issue patents or deeds for the portions of the allotment set aside for the petitioner. *See also* 25 C.F.R. § 152.33 (regulation implementing partition statute). In reviewing Jack's petition, the BIA required him to obtain a federally-approved surveyor's Certificate of Survey ("COS"), which generated the legal descriptions and boundaries for Jack's interest after partition, consistent with the BIA Title Records. (Doc. 1 at 6). The COS established a west parcel ("Allotment 1809A")—which contained 690.54 acres or 86.42% of Allotment 1809—and an east parcel ("Allotment 1809B")—

which contained the remaining 108.52 acres or 13.58% of Allotment 1809.[1] (Doc. 1-3).

The BIA denied Jack's petition multiple times on the grounds that Jack purchased his interest in Allotment 1809 from other trust holders, rather than acquiring them as an heir. (Doc. 1 at 6-7). However, a 1981 U.S. Solicitor's Directive actually allowed partition for allotments acquired by purchase, not just by heirs. (Doc. 1-7). Jack, and subsequently his estate after he died in 2019, did not receive the 1981 directive until 2021 when his estate appealed the partition denials to the Interior Board of Indian Appeals and received the BIA's administrative record. (Doc. 1 at 7-8). Shortly thereafter, the BIA reversed course and entered a Verified Settlement Agreement ("VSA") granting partition. (Doc. 1-2). Under the VSA, the BIA was to deliver all documents needed to complete partition and conveyances of title to counsel for Jack's estate for review and approval by January 15, 2022. (*Id.* at 2). On or before January 17, 2022, the BIA was required to execute deeds to "convey title for the majority interest in Allotment 1809[A] to the Estate of Jack Halverson," and, on or before January 20, 2022, complete all documents necessary to convey and/or distribute title from Jack's estate to his heir. (*Id.*).

---

[1] The west and east parcels are actually named "Allotment 1809" and "Allotment 1809B," respectively. However, for clarity the Court will refer to the new Allotment 1809 as Allotment 1809A, as the parties have in their briefs.

On January 18, 2022, the BIA recorded trust deeds supposedly in furtherance of the VSA and grant of partition. (Doc. 20-5). Plaintiff alleges that the BIA did not provide the deeds to Plaintiff for approval prior to their recording and that errors exist in the deeds, including the legal description and the identity of the grantor. (Doc. 1 at 9). Effectively, Plaintiff argues, the deeds did not actually partition Plaintiff's property. (*Id.* at 10).

Plaintiff filed a complaint in this Court on July 20, 2022, seeking a writ of mandamus to compel the BIA to properly partition Plaintiff's allotment and an award of attorney fees. (Doc. 1). On November 3, 2022, Plaintiff moved for partial summary judgment on the writ of mandamus, which Defendant opposed. (Docs. 14, 19). Defendant then moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(7). (Doc. 17).

Defendant's brief in support of her motion to dismiss explained that Plaintiff holds Allotment 1809A as a tenant in common with the Powers' Estate:

- Allotment 1809A – 690.54 acres
  - Estate of Penny Powers: 5.55% (fee)
  - Estate of Jack Halverson: 94.45% (trust)
- Allotment 1809B – 108.52 acres
  - Estate of Penny Powers: 5.55% (fee)
  - Crow Tribe: 50% (trust)
  - Estate of Michelle Walking Bear: 44.45% (trust)

(Doc. 18 at 4).

Upon seeing Defendant's description of the interests in the allotments, Plaintiff alleged that Defendant only granted Plaintiff 94.45%, or 652.21 acres, of the 690.54 acres of Allotment 1809A—about 38 acres less than the COS determined Plaintiff was entitled to. (Doc. 22 at 8-9). Plaintiff contends that the BIA, without explanation, conveyed the 38 acres to the Estate of Michelle Walking Bear because her estate's share of the allotment increased from 1.23% of 799.06 acres (9.83 acres) to 44.45% of 108.52 acres (48.24 acres) after the partition. (*Id.*). Defendant disagrees, maintaining that having a majority interest in an allotment legally means Plaintiff is a tenant in common with the Powers' Estate and has a right to possess and occupy all 690.54 acres. (Doc. 23 at 3-4). As understood by Defendant, the percent interest a person has is not necessarily equal to the percent acreage. (*Id.*).

## II.   Standard of Review

### A.   *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

On a Rule 12(b)(1) motion, the party seeking to invoke the Court's jurisdiction has the burden to establish it. *Scott v. Breeland*, 792 F.2d 925, 926 (9th Cir. 1986). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (internal citation omitted). The Court also may hear evidence and resolve factual disputes where necessary. *Id.*

*B.     Motion to Dismiss for Failure to Join a Required Party*

Rule 12(b)(7) provides for dismissal when the non-movant has failed to join a required party, as defined by Rule 19.  Fed. R. Civ. P. 12(b)(7).  When considering a motion to dismiss under Rule 12(b)(7), the moving party has the burden of persuasion to demonstrate that the nonparty must be joined.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  The Court accepts as true the allegations in the challenged pleading and draws all reasonable inferences in the non-movant's favor.  *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 996, n.1 (9th Cir. 2011).  The Court also may consider evidence outside the pleadings.  *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

## III.  Analysis

*A.     Lack of Jurisdiction*

Plaintiff contends the Court has subject matter jurisdiction under both 28 U.S.C. § 1361 and § 1331, which provide jurisdiction to the Court for mandamus actions to compel a federal agency—here, the BIA—to perform a duty owed to a plaintiff and over federal questions, respectively.  (Doc. 1 at 4).  Plaintiff also argues the Court has subject matter jurisdiction pursuant to 28 U.S.C § 1346 (United States as a defendant in a civil claim not exceeding $10,000 in damages), §1347 (partition action commenced by tenant in common or joint tenant with the

United States), and § 1353 (any civil action involving the right of a person of whole or part Indian blood to an allotment of land). (*Id.*).

Defendant seeks dismissal on the ground that Plaintiff's claim falls under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which does not waive sovereign immunity for disputes over trust or restricted Indian land. (Doc. 18 at 6-7). Because sovereign immunity is not waived, Defendant argues, the Court lacks subject matter jurisdiction and must dismiss the case. (*Id.* at 11-12). If the QTA does not apply, Defendant maintains that the Court still does not have jurisdiction over Plaintiff's claim for mandamus relief because the BIA does not owe Plaintiff a nondiscretionary duty to partition his land. (*Id.* at 12-13). Defendant does not address Plaintiff's other bases for jurisdiction.

Plaintiff responds that his suit is not a quiet title action because "[n]o dispute exists regarding the United States' title to Jack's 690.54 acres that the federal government holds in trust. Trust and fee holders are known, and fully accounted for in the COS ...." (Doc. 22 at 15). Plaintiff points to Congress's intent in excluding Indian trust lands from the QTA's waiver of sovereign immunity—to prevent adverse claimants from interfering with the United States' obligations to Indians—to support his contention that dismissal under the QTA is inappropriate. *Id.* (citing *Neighbors v. Norton*, 379 F.3d 956, 962 (10th Cir. 2004)).

Rather, Plaintiff argues, his suit is a mandamus action because the BIA's duty to partition Plaintiff's allotment pursuant to Defendant's trust obligations to him as an Indian to preserve his trust land is clear, certain, and plainly prescribed and he has no other adequate remedy. (*Id.* at 13-14). Further, no third parties are necessary because the agreement binding the BIA to partition the 690.54 acres to Plaintiff does not implicate any third-party interests. (*Id.* at 16-17). In fact, "BIA has not even shown that an 'Estate of Powers' exists." (*Id.* at 17).

### 1. Sovereign Immunity

The federal government is immune from suit unless immunity is waived and the government consents to being sued. *United States v. Sherwood*, 312 U.S. 584 (1941). As such, "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity … together with a claim falling within the terms of the waiver …." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citing *United States v. Mitchell*, 445 U.S. 535, 538-39 (1980) (*Mitchell I*); *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (*Mitchell II*)). "The terms of consent to be sued may not be inferred, but must be unequivocally expressed … in order to define a court's jurisdiction." *Id.* (internal citations, quotations, and brackets omitted).

The affirmative defense of sovereign immunity is generally raised under Rule 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). "The party

asserting subject matter jurisdiction has the burden of proving its existence, *i.e.* that immunity does not bar the suit." *Id.* (internal citation and quotation omitted).

2.    *Quiet Title Act*

a.    *Background*

The QTA, 28 U.S.C. § 2409a, provides the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota ex. rel. Bd. Of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). Accordingly, the QTA preempts other causes of action challenging the United States' title to real property, such as mandamus or Administrative Procedure Act claims. *See id.* at 287-88.

The QTA also waives sovereign immunity for (and gives the Court subject matter jurisdiction over) challenges to the United States' title to real property. 28 U.S.C. §§ 2409a, 1346(f). Put another way, "when the United States has an interest in the disputed property, the waiver of sovereign immunity must be found, if at all, within the QTA." *Alaska v. Babbitt*, 38 F.3d 1069, 1073 (9th Cir. 1994).

However, the QTA's waiver of sovereign immunity does not apply to trust or restricted Indian land. 28 U.S.C. § 2409a. So, when the United States "has a colorable claim" that it holds land in trust for an Indian and that claim is disputed, sovereign immunity is not waived, and the Court does not have jurisdiction. *Alaska v. Babbitt*, 182 F.2d 672, 675 (9th Cir. 1999). Because the QTA preempts

other causes of action if the United States' title to land is disputed, Plaintiff has no

legal recourse in this Court if the QTA applies.

Congress included the Indian land exception to the QTA in furtherance of

the federal government's trust responsibility over Indian lands. H.R. Rep. No.

1559, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4556–57. The Ninth

Circuit in *Wildman* explained:

> The ordinary reason for enforcing sovereign immunity—reasons not free
> from challenge and not always very attractive—are reinforced when Indian
> lands are in question. The 52.5 million acres held in trust by the United
> States for the Indians are the tribes' "single most important economic
> resource." F. Cohen, *Handbook of Federal Indian Law* (1982 ed.) 471. The
> interests held by the tribes as cestuis que trust are "a unique form of property
> right in the American legal system, shaped by the federal trust over tribal
> land and statutory restraints against alienation." *Id.* at 472. The land is the
> essential base of tribal culture, development, and society. *Id.* at 509. As
> trustee, the United States properly acts with the jealousy of a fiduciary to
> protect this base.

*Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987).

As such, preventing judicial examination of the merits of a case involving trust

land ensures that the United States can protect the land base it guaranteed to the

tribes as their trustee. *Id.*

   *b. QTA Test*

Whether a suit falls under the QTA is determined by a two-part test: (1)

whether the United States claims an interest in the property at issue; and (2)

whether there is a dispute over title to real property between interests of the

plaintiff and the United States. *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1023 (9th Cir. 2001).

The first element is satisfied if the United States claims an interest based on the property's status as trust or restricted Indian land. *Babbitt*, 38 F.3d at 1073. The first element here is not at issue because it is undisputed that Defendant has a trust interest in Plaintiff's property. (Doc. 18-1 at 6-17).

The second element—whether there is a dispute between the United States and the plaintiff over title to the real property at issue—"focus[es] on the *relief* sought by the plaintiffs." *Iowa Tribe of Kan. and Neb. v. Salazar*, 607 F.3d 1225, 1230 (10th Cir. 2010) (internal citation omitted). If the relief sought would divest the United States of its interest in the title to the property at issue, then the claim falls under the QTA; but if the relief sought would not divest the United States of its interest in title, then the QTA does not apply. *Cf. Ducheneaux v. Sec'y of the Interior*, 837 F.2d 340, 344 (8th Cir. 1988) (holding that the QTA applied when a non-Indian woman claimed an interest in her deceased Indian husband's trust property because vesting interest in her would eliminate the property's trust status) and *Conroy v. Conroy*, 575 F.2d 175, 183 (8th Cir. 1978) (holding that partition of trust land between two Indians did not dispute the United States' title because partition would not remove the divided land's trust status).

Actions to partition undivided interests in allotted lands generally do not involve disputes over title. *Haeker v. United States*, No. CV-14-20-BLG-SPW-CSO, 2014 WL 4073199, at *3 (D. Mont. Aug. 14, 2014) (findings and recommendations adopted). In *Haeker*, a non-Indian was conveyed a 1/9 undivided interest in an allotment held in trust. *Id.* at *1. He sued to partition his interest in the allotment and have title vested solely in himself. *Id.* The United States argued that the QTA and its trust land exception applied, thus precluding subject matter jurisdiction. *Id.* at *2. The Court rejected this argument, finding that a partition action does not raise a dispute over title because partition does not divest the United States of its trust interest in the land. *Id.* at *3. *See also Chemah v. Fodder*, 259 F. Supp. 910, 912 (W.D. Okla. 1966) (explaining that until the final patent in fee is issued to a non-Indian recipient of trust land, the title remains in trust, even though the United States has no trust responsibility to the non-Indian).

    c.    *QTA's Application*

Determining whether the second prong of the QTA test is satisfied here first requires the Court to resolve a dispute between the parties over what it means for Plaintiff to have a "majority interest," or a 94.45% interest, in Allotment 1809A. (*Cf.* Doc. 22 at 8-9 and Doc. 23 at 3-4). This question is relevant to whether there is a dispute over the 38 acres Plaintiff contends was taken from him and given to the Estate of Michelle Walking Bear, or whether a dispute exists only over

12

Defendant's decision not to partition Plaintiff's interest in Allotment 1809A from

that of the Powers' Estate. If the former is true, the Court must assess whether the

QTA applies to the dispute over the 38 acres *and* the partition request, whereas the

latter only requires an assessment of the partition issue.

Plaintiff understands his percent interest to mean he owns the majority of the

acres of Allotment 1809A, and that the acreage to which he is entitled is

determined by multiplying the total acres of the allotment by his percent interest.

(Doc. 22 at 8). So, according to Plaintiff, Defendant determined he was entitled to

652.21 acres of Allotment 1809A—about 38 acres less than the 690.54 acres

calculated by the COS. (*Id.* at 8-9).

Defendant, on the other hand, interprets the percentage as a description of

the percent of undivided *interest* in Allotment 1809A that Plaintiff holds as a

tenant in common with the Powers' Estate. (Doc. 23 at 3-4). Plaintiff's percent

interest as a tenant in common does not express the acreage to which he is entitled

when his interest is undivided. (*Id.* at 4). Rather, percent interest is relevant in

other tenant-in-common issues, like when one tenant leases her land and owes her

cotenant a certain percentage of the rents. (*Id.*).

The Court agrees with Defendant as to the legal meaning of the percent

interest representation. *Quiver* explained that undivided interest holders in

allotments "may own a different percentage of property" but "each holds an

undivided fractional interest in the whole property and has a right to the use and

possession of the property ... Because each cotenant has a right to possess the

whole, none has a right to exclusive possession of any part." *Quiver v. Deputy*

*Assistant Secretary of Indian Affairs*, 13 IBIA 344, 353 (1985). *See also* Jessica

Shoemaker, *Emulsified Property*, 43 Pepp. L. Rev. 945, 949 (2016) ("[M]any

properties within Indian Country are now jointly owned by multiple parties, and

within many of these jointly owned lands, there are co-owners who hold their

undivided interest in the same property in different legal tenure types.  Thus, there

are both fee and trust co-owners of the same land as tenants in common."); *Cutting*

*through the Red Tape: An Indian Landowner's Guide to Reading and Processing*

*Federal Forms*, Message Runner (Indian Land Tenure Found., Minn.), Spring

2011, at 5 (explaining that multiplying the aggregate share of land by the total

acreage of the allotment does not necessarily represent an actual plot of land when

a person's ownership is in undivided interests).

Because Defendant agrees that Plaintiff is entitled to 690.54 acres, the Court

does not need to consider Plaintiff's allegation that Defendant determined he was

entitled only to 652.21 acres.  As such, the heart of Plaintiff's suit is Defendant's

failure to completely and properly partition Plaintiff's share of Allotment 1809A

from the fee interest and grant Plaintiff sole and exclusive ownership of Allotment

1809A pursuant to the VSA and Defendant's trust responsibility to Plaintiff.  As

*Haeker* explains, a partition action does not raise a dispute over the United States'
title. 2014 WL 4073199, at *3. This case is no different, since partition would not
divest the United States of its trust interest in Plaintiff's land. Accordingly, the
QTA does not apply here.

Defendant construes the second element of the QTA test more broadly than
the caselaw demands to include *all* disputes over property in which the United
States has an interest. Under Defendant's interpretation, the fact that this case
presents a dispute over property in which the United States has a trust interest
means the QTA applies. However, the QTA test is narrower, requiring the United
States' title interest to be disputed by Plaintiff for the QTA to apply. *Leisnoi*, cited
by Defendants (Doc. 18 at 9), supports this conclusion. 267 F.3d 1019. In *Leisnoi*,
the parties agreed that the disputed property was subject to easements held by the
United States, satisfying the first prong of the QTA test. *Id.* at 1023. The dispute
satisfying the second prong of the test was whether Plaintiff or the United States
owned the surface estate of the property because that challenge raised the
possibility that the United States would be divested of its title to the surface estate,
irrespective of its easements. *Id.* Here, since partition is at issue, the possibility of
such divestment does not exist.

The Court's holding also furthers the policy behind the Indian lands
exception of the QTA because Defendant is not asserting sovereign immunity in

order to protect trust land held by an Indian from non-Indian interference. *See Wildman*, 827 F.2d at 1309. Instead, Defendant argues the QTA applies to defend against an allegation of a breach of Defendant's trust obligations to an Indian.

Accordingly, the Court finds the QTA does not apply to Plaintiff's claims.

### 3.    *Other Bases for Jurisdiction*

Although the QTA does not apply here, the Court still must evaluate whether it has jurisdiction to hear this case. Plaintiff primarily asserts jurisdiction exists under the Mandamus Act, which grants district courts "original jurisdiction of any action in the nature of mandamus" against a federal officer or agency. 28 U.S.C. § 1361. An action is in the nature of mandamus "only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is so plainly prescribed as to be free from doubt." *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (internal citation omitted). Plaintiff contends that the nondiscretionary duty breached by Defendant is Defendant's "overriding duty to deal fairly with [Plaintiff] under the 'most exacting fiduciary standards' … [and] to protect and preserve [Plaintiff's] Indian trust land." (Doc. 22 at 12 (citing *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001)); Doc. 1 at 10).

"In general, a trust relationship exists between the United States and Indian Nations." *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831). However, a breach of that relationship does not always create a cause of action. *Marceau v.*

*Blackfeet Hous. Auth.*, 540 F.3d 916, 922 (9th Cir. 2008). The Court, in the *Mitchell* cases, held that "[t]o create an actionable fiduciary duty of the federal government toward Indian tribes, a statute must give the government pervasive control over the resource at issue." *Id.* (citing *Mitchell I; Mitchell II*). *See also White Mountain Apache Tribe*, 537 U.S. at 477 ("To find a specific duty, a further source of law was needed to provide focus for the trust relationship."). The Supreme Court then clarified in *United States v. Navajo Nation* that determining when an actionable duty exists "must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." 537 U.S. 488, 490 (2003).

In *White Mountain Apache Tribe*, issued the same day as *Navajo Nation*, the Court examined the *Mitchell* doctrine as applied to the government's maintenance of Fort Apache buildings on the land of the White Mountain Apache Tribe. 537 U.S. 465 (2003). Fort Apache was established in 1870 by the U.S. Army, then transferred to the Department of the Interior to be used, in part, as a school. *Id.* at 468. In 1960, Congress declared that Fort Apache be "'held by the United States in trust for the White Mountain Apache Tribe, subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed for the purpose.'" *Id.* at 469 (quoting Pub. L. No. 86–392, 74 Stat. 8, 8).

In 1999, the tribe sued, alleging that the Secretary of the Interior exercised his statutory discretion to use the property, but then failed to maintain it and allowed it to fall into disrepair. *White Mountain Apache Tribe v. United States*, 46 Fed. Cl. 20, 22 (1999). The government argued that an actionable fiduciary duty did not exist, so the Federal Claims Court did not have jurisdiction. *White Mountain Apache Tribe*, 537 U.S. at 470. The Supreme Court disagreed, finding for two reasons that the 1960 Fort Apache statute "went beyond a bare trust and permit[ted] a fair inference that the Government [was] subject to duties as a trustee and liable in damages for breach." *Id.* at 474. First, the act "expressly define[d] a fiduciary relationship" by declaring that Fort Apache was "'held by the United States *in trust* for the White Mountain Apache Tribe.'" *Id.* (quoting 74 Stat. at 8) (emphasis added). Second, the United States exercised its discretionary authority under the statute to make use of the property. *Id.* at 475. "Because the government assumed plenary control over the assets held in trust, the government likewise assumed an obligation, as trustee, to preserve those assets." *Marceau*, 540 F.3d at 924 (citing *White Mountain Apache*, 537 U.S. at 475).

Here, an actionable fiduciary duty exists for analogous reasons as found in *White Mountain Apache*. First, it is uncontroverted that the United States holds Plaintiff's land in trust for the benefit of Plaintiff, who is an Indian. (Doc. 18-1 at 6-17; Doc. 1-5 at 2). "[T]he law is 'well established that the Government in its

dealings with Indian tribal property acts in a fiduciary capacity.'" *Lincoln v. Vigil*, 508 U.S. 182 (1993) (quoting *United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987)). Further, Defendant has the exclusive power to partition Plaintiff's land because of its status as trust land, further conferring onto Defendant "pervasive control" over both the resource and the specific disposition requested here. *Marceau*, 540 F.3d at 922 (citing *Mitchell I* and *Mitchell II*).

Second, Defendant exercised her discretionary authority under the partition statute, 25 U.S.C. § 378, to "cause" Plaintiff's land to be partitioned and new deeds to be issued. *See also* 25 C.F.R. § 152.33 (providing that the Secretary "may issue new deeds to heirs if the Secretary finds trust lands susceptible to partition"). Because Defendant exercised her discretion to partition Plaintiff's land and issue new deeds, Defendant is thus bound to deal fairly with Plaintiff and preserve the assets at issue. Failure to do so gives rise to a breach of trust action, which Plaintiff properly rooted in a writ for mandamus. *Cobell*, 240 F.3d at 1108 (holding that mandamus relief is appropriate for breach of trust actions).

Defendant argues that the partition statute's discretionary language governs the mandamus analysis, preventing the Court from finding that the statute confers a nondiscretionary duty on Defendant. (Doc. 18 at 13). However, Defendant's analysis overlooks the fact that Defendant affirmatively exercised that discretion to grant partition, so the procedural posture that the plain language of the statute

contemplates is not the procedural posture here. Defendant's contentions also ignore the unique layer added to the mandamus analysis by Plaintiff's status as an Indian and the land's status as held in trust. Considering both these facts, the Court finds Plaintiff alleged an actionable breach of trust claim under the Mandamus Act, which provides the Court with the requisite jurisdiction to hear Plaintiff's case.

Because the Court has jurisdiction under the Mandamus Act, it will not assess whether it has jurisdiction under the other statutes cited by Plaintiff.

**B.    *Failure to Join a Necessary Party***

Defendant lastly argues the Court should dismiss the case because Plaintiff failed to join a necessary party, the Powers' Estate. (Doc. 18 at 13) (emphasis added). Defendant argues that because Allotment 1809A is owned in common by Plaintiff and the Powers' Estate, Plaintiff's requested relief for full partition of his land cannot be granted without the Powers' Estate. (*Id.* at 13-14).

A nonparty is necessary and must be joined if either:

(1) in the nonparty's absence, complete relief cannot be granted among those already-present parties, or

(2) the nonparty claims an interest relating to the subject of the action, and is so situated that the disposition of the action may either (i) impede or impair the nonparty's ability to protect their interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest.

Fed. R. Civ. P. 19(a).

The Court finds the Powers' Estate is not necessary for two reasons. First, Defendant admits "the Powers Estate's interest *must be evaluated and decided*, because *if it has retained its fee interest*, the United States cannot convey 'sole and exclusive' ownership of Allotment 1809A to Plaintiff." (Doc. 18 at 13-14) (emphasis added). This admission demonstrates that the Powers' Estate's interest in the allotment may or may not be necessary for partition. Since Defendant carries the burden to show a party is necessary, Defendant's uncertainty precludes the Court from granting her motion. *Makah Indian Tribe*, 910 F.2d at 558.

Second, Plaintiff seeks mandamus relief pursuant to a breach of Defendant's trust responsibility to him. Though the relief sought is partition from the Powers' Estate's interest in the allotment, the Powers' Estate has no trust duties to Plaintiff that it could have breached and that the Court could remedy. As such, the Powers' Estate is not a proper party that Plaintiff needs to join.

## IV.   Conclusion

Accordingly, the Court finds it has jurisdiction over Plaintiff's case and no other parties need to be joined. IT IS SO ORDERED that Defendant Debra Anne Haaland's Motion to Dismiss (Doc. 17) is DENIED.

DATED this _11th_ day of March, 2023.

_Susan P. Watters_
SUSAN P. WATTERS
United States District Judge

21