IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES HALVERSON as Personal Representative of the fee estate of JACK HALVERSON,<br><br>Plaintiff,<br><br>vs.<br><br>DEBRA ANNE HAALAND, Secretary of the Interior,<br><br>Defendant. | CV 22-76-BLG-SPW<br><br>ORDER |

Before the Court is the Motion for Partial Summary Judgment filed by Plaintiff James Halverson, as personal representative of the fee estate of Jack Halverson. (Doc. 13). Plaintiff asserts it is entitled to judgment as a matter of law because the undisputed facts show Defendant Debra Anne Haaland, Secretary of the Interior, failed to record (1) a deed partitioning and conveying an 86.42% interest, or 690.54 acres, in Allotment 1809 from the United States as trust holder to the Estate of Jack Halverson ("Jack's estate"), and (2) a fee patent deed conveying Jack's estate's interest in Allotment 1809 to Jack's heir. (*Id.* at 2).

For the following reasons, the Court denies the motion as to Defendant's failure to record a deed partitioning and conveying the interest in Allotment 1809

1

to Jack's estate, and grants the motion as to Defendant's failure to record a patent deed conveying the interest to Jack's heirs.

I.  **Relevant Background**

The Court outlined the facts of this case in its Order on Defendant's Motion to Dismiss (Doc. 40), so it will only reiterate the facts relevant to this motion.

In 2015, Jack Halverson filed with the Bureau of Indian Affairs ("BIA") a petition to partition his 86.42% interest in Allotment 1809. (Doc. 1 at 5). Allotment 1809 consists of 799.06 acres on the Crow Indian Reservation in Yellowstone County, Montana. (Doc. 20-2 at 2). Defendant has represented that the parties' interests were divided as such:

- Estate of Penny Powers: 5.55% (fee)
- Estate of Jack Halverson: 86.42% (trust)
- Crow Tribe: 6.79% (trust)
- Estate of Michelle Walking Bear: 1.23% (trust)

(Doc. 19 at 3).

In 2021, the BIA approved Plaintiff's[1] request and entered into a Verified Settlement Agreement ("VSA") with Plaintiff to execute partition and the conveyances. (Doc. 1-2). Under the VSA, the BIA was to deliver all documents needed to complete partition and conveyances of title to counsel for Jack's estate for review and approval by January 15, 2022. (*Id.* at 2). On or before January 17,

---

[1] Jack died in 2019. Plaintiff assumed negotiations with the BIA thereafter. (Doc. 1 at 7-8).

2

2022, the BIA was required to execute a deed to "convey title for the majority interest in Allotment 1809[A] to the Estate of Jack Halverson," and, on or before January 20, 2022, complete all documents necessary to convey and/or distribute title from Jack's estate to Jack's heir. (*Id.*).

On January 18, 2022, the BIA recorded a trust deed to Jack's estate. (Doc. 20-5). To effectuate the partition Defendant split Allotment 1809 into Allotments 1809A[2] and 1809B, with the interests divided as follows:

- Allotment 1809A – 690.54 acres
    - Estate of Penny Powers: 5.55% (fee)
    - Estate of Jack Halverson: 94.45% (trust)
- Allotment 1809B – 108.52 acres
    - Estate of Penny Powers: 5.55% (fee)
    - Crow Tribe: 50% (trust)
    - Estate of Michelle Walking Bear: 44.45% (trust)

(Doc. 19 at 4). Pursuant to the split, the deed recorded by the BIA conveyed 13/162 undivided trust interest in what became Allotment 1809A from the Estate of Michelle Walking Bear and the Crow Tribe to Jack's estate. (Doc. 20-5). The BIA never recorded a deed conveying interest from Jack's estate to Jack's heir. (Doc. 20 at 4).

Plaintiff filed a complaint in this Court on July 20, 2022, seeking a writ of mandamus to compel the BIA to properly partition Plaintiff's land and to convey

---

[2] The new parcels are actually named "Allotment 1809" and "Allotment 1809B," respectively. However, for clarity, the Court will refer to the new Allotment 1809 as Allotment 1809A, as the parties have in their briefs.

3

the land from Jack's estate to Jack's heir, plus an award of attorney fees. (Doc. 1). Plaintiff alleges the BIA failed to record deeds that convey full, exclusive ownership of the 690.54 acres to Jack's estate and subsequently to Jack's heir. (*Id.* at 10-11). Plaintiff also alleges that the BIA did not provide the deeds to Plaintiff for approval prior to their recording and that errors exist in the deeds, including the legal description and the identity of the grantor. (*Id.* at 9). Effectively, Plaintiff argues, the deeds did not actually partition Plaintiff's property. (*Id.* at 11).

On November 3, 2022, Plaintiff moved for partial summary judgment on the writ of mandamus claim, which Defendant opposes. (Docs. 13, 19). Defendant then moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). (Doc. 17). On the Motion to Dismiss, the Court held it had jurisdiction to hear the case because (1) the Quiet Title Act, 28 U.S.C. § 2409a did not apply, and (2) Plaintiff properly pled a claim for a writ of mandamus, thus waiving Defendant's sovereign immunity. (Doc. 40). The Court also denied Defendant's Motion to Dismiss for failure to join a necessary party. (*Id.* at 20-21).

In reaching these conclusions, the Court resolved a key dispute between the parties concerning the meaning in the VSA of "majority interest." While Plaintiff contended that majority interest meant Plaintiff held the majority of the acres in the allotment, Defendant asserted it represented the percent interest Plaintiff held in Allotment 1809A as a tenant in common with the Estate of Penny Powers. Under

4

*Quiver*, the Court found Defendant's interpretation was correct. (*Id.* at 13-14 (citing *Quiver v. Deputy Assistant of Indian Affs.*, 13 IBIA 344, 353 (1985))).

## II. Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" if it could affect the outcome of the suit under the governing law. *Id.*

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To meet this burden, the movant must identify those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which they believe demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). If the moving party meets their initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences

drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## III. Analysis

Plaintiff asserts it is entitled to judgment as a matter of law because the undisputed facts show Defendant failed to record (1) a deed partitioning and conveying an 86.42% interest, or 690.54 acres, in Allotment 1809 from the United States as trust holder to Jack's estate, and (2) a fee patent deed conveying Jack's estate's interest in Allotment 1809 to Jack's heir. (Doc. 14 at 2). The BIA is required to record such deeds under the VSA, and since the VSA is a contract, the Court must enforce its terms via a writ of mandamus. (*Id.* at 3-4).

Defendant argues the Court should deny Plaintiff's motion because it does not identify the claim on which Plaintiff seeks summary judgment and instead is framed as seeking specific performance on a contract, which is not a claim pled in its complaint. (Doc. 19 at 6-7). Even if Plaintiff's motion is construed as moving on Plaintiff's mandamus claim, Plaintiff cannot prove the elements required for a mandamus claim. (*Id.* at 9-10). Lastly, even if the Court finds Plaintiff satisfied the elements for a writ of mandamus, Defendant maintains she complied with the terms of the VSA in recording the partition and conveyance deed to Jack's estate. (*Id.* at 11-14). Defendant does not dispute that the BIA failed to record a fee patent deed conveying Jack's estate's interest to Jack's heir. (Doc. 20 at 4).

### A. *Specific Performance*

As an initial matter, the Court will address whether Plaintiff specified the claim on which it is moving and whether its motion for summary judgment seeks specific performance. Defendant argues Plaintiff's motion does not explicitly state on which count Plaintiff is moving but that its brief in support heavily relies on contract law. (*See* Docs. 13, 14 at 3-5). Based on that reading, Defendant argues Plaintiff's motion should be denied because its complaint did not state a claim for specific performance on a contract. (Doc. 19 at 6-7). Even if it did, the Tucker Act[3] does not provide the non-monetary remedy Plaintiff seeks. (*Id.* at 8-9). In its reply, Plaintiff reframes its argument to say that Defendant has a duty to partition, and that the terms of partition are prescribed by the VSA's plain meaning. (Doc. 21 at 2-8).

First, as to what claim Plaintiff is moving on, Plaintiff's complaint only asserts a claim for partition and attorney fees. (Doc. 1 at 11-13). Since Plaintiff does not mention attorney fees and focuses generally on partition via a writ of mandamus in its motion, the Court finds Plaintiff is moving on the partition claim.

Second, as to whether Plaintiff is stating a claim for specific performance, the Court agrees that Plaintiff's reliance on contract law in its opening brief, read

---

[3] The Tucker Act, 28 U.S.C. § 1346(a)(2), provides a cause of action against the United States for breach of contract claims with damages of more than $10,000.

7

in isolation, implies that Plaintiff filed a breach of contract claim and is seeking specific performance of the VSA. (*See* Doc. 14 at 3-5 (citing Ninth Circuit and Montana contract law)). However, in the context of Plaintiff's complaint, reply brief, and briefing on Defendant's motion to dismiss, the Court finds Plaintiff seeks summary judgment on its partition claim and an order requiring Defendant to comply with the terms of the VSA in partitioning the property. As described in the Court's Order on the Motion to Dismiss, Plaintiff's complaint frames the action as a writ of mandamus to compel Defendant to partition Plaintiff's interest in Allotment 1809A pursuant to Defendant's duties as a trustee to Plaintiff. Plaintiff's reply in support of summary judgment explains the same. Even its opening brief comments on how Plaintiff understands the terms of the VSA it asks the Court to enforce through a writ of mandamus, notwithstanding the brief's tangents into contract law. Accordingly, the Court finds that Plaintiff does not argue for specific performance and refuses to deny its motion on that ground.

    *B.    Mandamus*

The parties next disagree on whether Plaintiff satisfied the requirements for a writ of mandamus action. "An order pursuant to § 1361 is available only if (1) the claim is clear and certain; (2) the official's or agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Agua Caliente Tribe of Cupeño*

*Indians of the Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997)). The Court found in its Order on the Motion to Dismiss that Plaintiff satisfied the first two elements. Specifically, the Court held that Defendant's clear, nondiscretionary duty to Plaintiff arose from Defendant's trust obligations and Defendant's affirmative exercise of discretion under 25 U.S.C. § 378 to approve Plaintiff's partition petition. (Doc. 40 at 16-20).

However, neither the Court nor the parties addressed the third element on the Motion to Dismiss, except as related to: (1) the QTA, which is not relevant here because the Court determined the QTA does not apply, and (2) Plaintiff's general contention that no other adequate remedy existed to compel the BIA to perform the VSA. (Doc. 22 at 13-14; Doc. 23 at 2). Thus, though the Court already decided that Plaintiff properly pleaded a claim for a writ of mandamus, it will address whether another adequate remedy exists to preclude Plaintiff's mandamus action.

On summary judgment, Defendant argues Plaintiff has another remedy in state court—to bring a quiet title claim against the Estate of Penny Powers. Plaintiff responds that a state court suit is not an adequate remedy because (1) only the BIA, not a third party, can convey federal trust lands and correct the deeds, (2) only the BIA and Plaintiff are parties to the VSA, and (3) it is not clear whether the Estate of Penny Powers is "available" to sue. (Doc. 21 at 12).

9

The parties' dispute over the adequate remedy stems from their respective framing of the issues in this case. Defendant takes a practical view of the remedy requested, namely that Plaintiff ultimately seeks partition of its land from that of the Estate of Penny Powers. Plaintiff, meanwhile, focuses on the legal duties of Defendant as trustee for the Plaintiff and the actions necessary to remedy the breach of those duties.

In its Order on the Motion to Dismiss, the Court extensively discussed the centrality of Defendant's trust duty to Plaintiff's mandamus claim. (Doc. 40 at 16-20). Without that unique relationship, this case would not be in front of the Court. As such, the Court's analysis of the third mandamus element must focus on whether another remedy exists to address the breaches of trust alleged by Plaintiff. Simply put, a state court quiet title case against a third party who has no duty to Plaintiff cannot address Defendant's alleged breaches of trust.

Furthermore, Defendant did not cite, nor could the Court find, a case in which a state court remedy was found to be an adequate alternative to a remedy in federal court. Instead, the cases cited by Defendant and found by the Court held that other federal causes of action constituted adequate remedies. *E.g. Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021) (finding a claim under the Administrative Procedure Act to be another adequate remedy); *Rush v. Parham*, 625 F.2d 1150, 1154 (5th Cir. 1980) (finding the plaintiff's claims in federal court

10

against state officials for unconstitutionally withholding Medicaid funds to pay for gender-affirming surgery precluded the plaintiff's mandamus claim against federal officials to compel them to withdraw approval of Georgia's Medicaid plan, since the former also would ensure the surgery was paid for by Medicaid).

Accordingly, the Court finds that no adequate remedy other than a writ of mandamus exists to address Plaintiff's claim, so Plaintiff has proven the elements of a mandamus claim.

    C.    *Partition and Conveyance of Jack's Estate's Interest*

Having found Plaintiff satisfied the elements of a mandamus claim, the Court moves to the substance of Plaintiff's motion: whether the undisputed facts show, as a matter of law, Plaintiff is entitled to complete partition of its interest in Allotment 1809 and to corrected deeds reflecting complete partition. Plaintiff argues that the VSA "is clear" that the BIA agreed to record a deed from the United States to Jack's estate partitioning and conveying the 690.54 acres from the remainder of Allotment 1809. (Doc. 14 at 4). Despite the clear language of the VSA, the BIA did not partition the property from the Estate of Penny Powers' fee land and only conveyed 652 acres to Jack's estate. (Doc. 21 at 4-5). Plaintiff also argues Defendant erroneously conveyed the land to Jack's estate from third parties, rather than the United States, in contravention of the VSA. (Doc. 21 at 8).

11

Defendant asserts that the VSA only requires Defendant to partition and convey title for the majority *interest* in Allotment 1809 to Jack's estate, and since Defendant did so, she complied with the terms of the VSA. (Doc. 19 at 11-12). As to Plaintiff's argument about the identity of the grantor, Defendant maintains that the deed "conveyed the United States' interest, held for the [Crow] Tribe and the Walking Bear Estate in trust, to the Estate of Jack Halverson," resulting in a 94.45% interest in the 690.54-acre plot, which satisfies the VSA. (*Id.*). Lastly, Defendant argues that even if the Court determines that she did not comply with the terms of the VSA, the relief sought by Plaintiff would require her to unlawfully engage in *ultra vires* action, since "the BIA lacks the power or authority to partition fee interest on Indian lands." (*Id.* at 13 (citing *Gray v. BIA*, 33 IBIA 26, 27 (1998))).

The Court agrees with Defendant that she satisfied her obligations to record a deed partitioning and conveying Plaintiff's majority interest in Allotment 1809. The VSA states that the BIA would complete "all documents necessary to complete partition and convey title for the majority interest in Allotment 1809." (Doc. 1-2 at 2). The Court already determined that majority interest does not mean the majority of the acres of Allotment 1809. Given that understanding, Defendant satisfied her obligations under the VSA by partitioning Plaintiff's interest from the other trust interests held by the Estate of Michelle Walking Bear and the Crow

12

Tribe. Defendant does not have the authority to partition trust lands from fee lands, *Gray*, 33 IBIA at 27, so such a division represents partition to the extent feasible under the BIA's authority.

Plaintiff argues that the 1981 Solicitor's Directive establishes the BIA's ability to partition a non-Indian's fee land from trust land. (Doc. 21 at 7 (citing Doc. 1-7)). However, this misconstrues the Solicitor's Directive. The Solicitor's Directive focused on whether an enrolled member of the Crow Tribe who purchased interest in an allotment owned by an heir to an allottee could administratively partition her land under 25 U.S.C. § 378. (Doc. 1-7 at 1). The BIA Area Director in the Billings Area Office concluded the land could not be partitioned administratively because a party seeking partition must be an heir of an allottee, not a grantee of allotment interest, under the plain language of the statute. (*Id.*). The Solicitor disagreed, finding it was "reasonable to assume that Congress intended that this administrative partition authority should extend to grantees of heirs—that Indian grantees stand in the shoes of the grantor heirs," and thus have standing to petition the BIA for partition. (*Id.* at 2).

In support of this conclusion, the Solicitor explained that the BIA decided in 1977 that it could partition three tracts in which a non-Indian grantee of an heir owned an undivided 1/12 interest. (*Id.* at 2). The Solicitor's description of the case, which is not named, does not clarify if the non-Indian grantee held the

interest in fee or in trust. However, the Solicitor also cites to *Chemah v. Fodder*, which held that conveyance of trust land to a non-Indian does not terminate the land's trust status. (*Id.* (citing 259 F. Supp. 910, 911 (W.D. Okla. 1966))). Given the absence of any discussion of fee land in *Chemah*, the 1977 decision, and the case giving rise to the Solicitor's Directive, the Court reads the Solicitor's Directive as applying only to the BIA's ability to partition trust lands that were purchased rather than inherited and not to the BIA's ability to partition trust land from fee lands. Thus, *Gray* is controlling and precludes Defendant from partitioning Plaintiff's trust land from the Estate of Penny Powers' fee land.

Defendant also conveyed the necessary interest in Allotment 1809 to ensure Jack's estate had title to the interest to which it is entitled. Defendant's January 18, 2022, deed conveyed a 13/162 undivided interest in Allotment 1809A to Plaintiff, which added to the interest to which Plaintiff already title. (Doc. 20-5). Together, the interest conveyed by deed and the interest Plaintiff already had title to constitute 86.42% interest in Allotment 1809, or 94.45% interest in Allotment 1809A. (*See* Docs. 20-2, 20-3).

Plaintiff contends that the partition and conveyance took 37.97 acres from Jack's estate and vested them in the Estate of Walking Bear. (Doc. 21 at 8). However, as explained in the Court's Order on the Motion to Dismiss, the percent interests diagramed by Defendant do not represent the fraction of acres of

14

Allotments 1809, 1809A, and 1809B that each landowner owns but rather their percent interest as tenants in common. Thus, no taking occurred, and Plaintiff correctly holds a 94.45% interest in the 690.54 acres of Allotment 1809A as a tenant in common with the Estate of Penny Powers.

As to the issue of the grantor's identity, which Plaintiff argues must be the United States, the VSA is silent. The VSA only states that the BIA will complete "all documents necessary to complete partition and convey title." (Doc. 1-2 at 2). Thus, recording a deed from a third-party grantor does not violate the terms of the VSA and, in fact, seeks to accomplish the goal of partition: to give Plaintiff title to contiguous, rather than checkerboarded, land exclusive to other trust holders.

The Court understands that the VSA's silence on the BIA's inability to partition Plaintiff's land from that of the Estate of Penny Powers is frustrating. All parties would have benefited from clearer communication by the BIA and language in the VSA about the such limitations, particularly given BIA's trust duty to deal fairly with Plaintiff. However, the Court can offer Plaintiff no remedy for the frustration stemming from that lack of clarity and the jurisdictional bounds of the BIA's authority.

Thus, the Court finds that, as a matter of law, Defendant fulfilled the VSA's requirement to record a deed partitioning and conveying an 86.42% interest in

Allotment 1809 to Jack's estate according to the terms of the VSA. The Court denies the motion on this issue.

### D. Conveyance of Interest of Jack's Estate to Jack's Heir

Lastly, Plaintiff asserts Defendant failed to record a deed conveying Jack's estate's interest in Allotment 1809A to Jack's heir. Defendant does not dispute this (Doc. 20 at 4), so the Court grants the motion on this issue.

## IV. Conclusion

For these reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 13) is DENIED as Defendant's alleged failure to record a deed partitioning and conveying Plaintiff's full interest in Allotment 1809 to the Estate of Jack Halverson and GRANTED as to Defendant's failure to record a deed conveying the Estate of Jack Halverson's interest in Allotment 1809 to Jack's heir.

DATED this 31st day of May, 2023.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge